IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES H. JACOBY, AS TRUSTEE ON BEHALF OF THE INDENTURE OF THE TRUST OF RICHARD A. JACOBY DATED OCTOBER 31, 1992 | : : : : : | CIVIL ACTION |
| v. | : : | |
| AXA EQUITABLE LIFE INSURANCE COMPANY | : : | NO. 13-6511 |

**MEMORANDUM**

**L. Felipe Restrepo, U.S. District Court Judge**                             **December 15, 2014**

Presently before the Court are Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF Doc. 12) and Plaintiff's response in opposition to Defendant's Motion (Doc. 13). Oral argument on the motion was held on November 20, 2014, and the motion is ripe for disposition.[1] For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.   BACKGROUND**

In 1984, Defendant[2] issued Richard A. Jacoby (the "Insured") a life insurance policy with a face amount of $450,000 (the "Policy"). Am. Compl. ¶ 11, Ex. A. Plaintiff claims that the policy was marketed and sold as a "Vanishing Premium Policy," which meant that after nine annual payments, the dividends earned would be used to pay all future premiums. *Id.* ¶¶ 13-14. On page 3 of the Policy, the "Premium Period" is listed as "For Life." *Id.* at Ex. A. On page 5, four different dividend options are listed. *Id.* One such option states, "Premiums: Your

---

[1]   The parties also submitted short letter briefs to the Court in advance of oral argument, which the Court has considered. Docs. 18-19.

[2]   The named Defendant in this action is AXA Equitable Life Insurance Company. The parties agree that the Policy was originally issued by The Equitable Life Insurance Society of the United States, which changed its name in 2004 to AXA Equitable Life Insurance Company.

1

dividends will be used to help pay any premium then due." *Id.* A second option states, "Dividend Additions: Your dividends will be used to provide paid-up additional whole life insurance on the Insured." *Id.* On the first page of the Insured's application for life insurance, which was incorporated into the Policy, in a section titled "Dividend Election," the "Additions" option was selected. *Id.*

The Policy was assigned to the Indenture of Trust of Richard A. Jacoby (the "Trust") in 1992 and James H. Jacoby ("Plaintiff") was named as Trustee. *Id.* ¶¶ 15-16, Ex. B. Nine annual premiums were paid between 1984 and 1992, totaling approximately $77,341.50. *Id.* ¶¶ 19-20. In 1993, counsel for the Trust received a Notice of Payment Due ("Notice") for the tenth annual premium payment. *See id.* ¶¶ 19-21. After learning about the Notice, the Insured contacted an individual named Kathy Krakowski at HSA Corporation to determine whether the Notice could be disregarded. *Id.* ¶¶ 25-26, Exs. F, G. Krakowski responded by letter in March 1993, stating: "Enclosed is the Equitable Life illustration you requested showing existing dividends being used to pay premiums. As you will see from this illustration, this will keep your policy in-force without having to pay any additional premiums." *Id.* ¶¶ 28-29, Ex. G. The letter also enclosed an illustration allegedly from Defendant (the "1993 Illustration") that, according to Plaintiff's Amended Complaint, showed no further premiums were due. *Id.* ¶¶ 28-30, Ex. G.

The Trust did not pay the Notice and never received any subsequent notices or communication from Defendant until 2013. *See id.* ¶¶ 32-36, 41-43, 46-47. In March 2013, counsel for the Trust requested from Defendant the most recent annual statement for the Policy. *Id.* ¶ 37. In response, Defendant notified the Trust that the policy had been converted to a term policy after the tenth premium payment was not paid, and the term policy expired on August 2, 2004. *See id.* ¶¶ 38-40. Defendant thereafter refused to reinstate the Policy. *Id.* ¶ 49.

Plaintiff, trustee of the Trust, now brings this suit in his individual capacity[3] against Defendant, alleging breach of contract (Count I), insurance bad faith (Count II), promissory estoppel (Count III), fraud (Count IV), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count V).  Defendant has moved to dismiss the Amended Complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.   JURISDICTION AND LEGAL STANDARDS

This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).[4]  Dismissal pursuant to Rule 12(b)(6) is proper where an Amended Complaint fails to state a claim upon which relief may be granted, such as where the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations are insufficient to survive a defendant's motion to dismiss.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The Court must consider only those facts alleged in the Amended Complaint and must accept all of those allegations as true.  *Wiest v. Lynch*, 15 F. Supp. 3d 543, 557 (E.D. Pa. 2014) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).  But the Court "need not accept as true unsupported conclusions and unwarranted

---

[3]   Because Plaintiff brings this suit in his individual capacity, and possesses powers to hold, manage and dispose of the assets of the trust for the benefit of others according to trust documentation, Plaintiff's Pennsylvania citizenship controls for diversity purposes.  *See Navarro Savings Assoc. v. Lee,* 446 U.S. 458 (1980); Am. Compl. ¶ 7, Ex. N, at 7-12.  As Defendant is a New York citizen for diversity purposes and the amount in controversy exceeds $75,000, jurisdiction appears proper based on the record before the Court.  *Id.* ¶¶ 8-9.

[4]   Because this is a diversity action, Pennsylvania substantive law applies to Plaintiff's claims.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).  There is no dispute between the parties that Pennsylvania law applies.

3

inferences," *see id.* (quoting *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000)), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

"Generally, a court ruling on a motion to dismiss will not consider 'matters extraneous to the pleadings.' 'However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" *Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 143 (3d Cir. 2013) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1140, 1426 (3d Cir. 1997) (emphasis and alterations in original)).

In addition, where a plaintiff alleges fraud, he is subject to the heightened pleading standard of Rule 9(b) and must allege fraud with particularity. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), Plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation," *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007), and include "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). In other words, Plaintiff must plead the "who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation marks and citation omitted).

### III. DISCUSSION

#### a. Count I – Breach of Contract

To make out a breach of contract claim under Pennsylvania law, a Plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa.

Super. Ct. 2004) (internal quotations omitted).  Where an insurance policy is "integral to or explicitly relied upon in the complaint," the Court may consider the policy itself without converting the motion to dismiss into a motion for summary judgment.  *In re Rockefeller*, 311 F.3d at 206.  On the face of the Amended Complaint, Plaintiff alleges all elements of a breach of contract claim.[5]  *See* Am. Compl. ¶¶ 80-84.  Defendant argues, however, that Plaintiff's allegations are directly contradicted by the unambiguous language of the policy, and where the language of an insurance policy is clear and unambiguous, the Court must give effect to that language.  Def.'s Br. 11-12.  Plaintiff counters that the contract is ambiguous, because the Policy does not specify from where the premiums are paid.  Hr'g Tr. 12:11-17.

Whether a contract contains an ambiguity is a question of law to be decided by the Court. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009).  When making such a determination, the Court should consider the specific language of the contract, any meanings suggested by counsel, and extrinsic evidence offered in support of each interpretation.  *See Wulf v. Bank of Am.*, 798 F. Supp. 2d 586, 592 (E.D. Pa. 2011) (citing *Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001)); *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991).  "If the words of the contract are capable of more than one objectively reasonable interpretation, the words are ambiguous."  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011).  Ultimately, if the Court finds a contract unambiguous, the Court will interpret it as a matter of law; if the Court finds the contract ambiguous, its meaning is a

---

[5] Defendant argues that Plaintiff has not alleged specifically what provisions of the contract Defendant breached.  Def.'s Br. 13-14.  However, Plaintiff pled that Defendant breached the contract by, converting the Policy from a whole-life to a term policy and using the cash surrender value of the policy to purchase a term policy, even though, according to Plaintiff, no further premiums were due on the Policy.  *See* Am. Compl. ¶¶ 82-83.  Because the Court must construe Plaintiff's complaint liberally at the motion to dismiss stage and draw all reasonable inferences in favor of Plaintiff, we find these allegations sufficiently specific at this stage to allege a breach of contract.  *See Twombly*, 550 U.S. 544 at 555.

question for the finder of fact.  *See Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. Ct. 1984).

For the reasons articulated by the Third Circuit in *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 138-39 (3d Cir. 2005), we cannot agree with Defendant that the Policy was clear and unambiguous as to the source of premium payments.  Here, the existence of the policy term providing that premiums were payable for life "does not unambiguously mean that [Plaintiff] would be required to pay those premiums out-of-pocket for that entire period of time." *Id.* at 139.  Further, the Insured's election of the "Dividend Additions" option does not foreclose the possibility that once dividends accumulated to a so-called "vanishing point," they could also be applied to eliminate the premiums.[6]  In short, although these provisions of the Policy may cast doubt on the "vanishing premium" possibility, the Policy does not explicitly exclude it.

If there was no payment "due" to be paid by the Insured that went unpaid, Defendant's actions may have been a breach under the terms of the Policy.  *See* Am. Compl., Ex. A, at 4, 6. In order to determine the appropriate interpretation of the contract, the Court needs additional information not contained in the pleadings concerning what the parties intended when the contract was formed.  Defendant's argument is therefore more appropriately decided on a motion for summary judgment, and Plaintiff's breach of contract claim may proceed.

---

[6]  Indeed, in *Tran*, the terms of the life insurance policy and the accompanying illustration at issue, which Defendant represented at oral argument on the Motion to Dismiss were the operative documents on appeal, support Plaintiff's position.  These policy documents, considered and discussed by the Third Circuit, suggest that the plaintiff either affirmatively made the same dividend election to purchase additional paid-up insurance as the Insured made here, or that election was made by default pursuant to the terms of the policy.  In both the *Tran* policy and the instant Policy, a separate dividend option existed to have dividends applied toward the policy premiums.  *See Tran*, 408 F.3d at 133, 139; *see also Tran v. Metro. Life Ins. Co.*, Civ. Dkt. No. 01-cv-00262-DWA, Doc. 66-1, at Exs. B, C (attaching insured's life insurance application, policy, and relevant illustrations).

### b. Count II – Insurance Bad Faith

To survive a motion to dismiss an insurance bad faith claim brought pursuant to 42 Pa. Const. Stat. § 8371, a plaintiff must allege that "the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. v. N. Ins. Co. of N.Y.*, 334 F.3d 306, 312 (3d Cir. 2003). Plaintiff alleges that Defendant acted in bad faith by taking a number of actions after the parties had entered into an insurance contract, such as failing to send annual statements and failing to contact Plaintiff regarding overdue premium payments. *See* Am. Compl. ¶ 87. Importantly, Plaintiff does not appear to allege that any of Defendant's actions surrounding the marketing or sale of the Policy to the Insured were violations of § 8371. *See id.* Nevertheless, Defendant argues that Plaintiff's bad faith claims must fail because they are not within the narrow categories articulated by the Pennsylvania Supreme Court in *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007).

In *Toy*, the court considered whether an insurer's actions soliciting the purchase of an insurance policy could be considered bad faith under § 8371. In holding that they could not, the Court stated that "bad faith" encompasses "the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context" or the insurer's "obligation to pay for a loss in the first party claim context." *Toy*, 928 A.2d at 199. Here, however, Plaintiff's allegations of bad faith do not concern Defendant's practices soliciting the purchase of a policy. Instead, Plaintiff's allegations principally concern Defendant's conduct in connection with its discharge of obligations under the Policy *after* purchase by the Insured,

which still may be an appropriate foundation for a bad faith claim.[7] *See Kofsky v. Unum Life Ins. Co. of Am.*, 2014 WL 4375725, at *5 (E.D. Pa. Sept. 2, 2014) (denying motion to dismiss where Plaintiff alleged that defendant unreasonably canceled his insurance policy); *Bukofski v. USAA Cas. Ins. Co.*, 2009 WL 1609402, at *4-*5 (M.D. Pa. June 9, 2009) (denying motion to dismiss bad faith claim and rejecting defendant's reliance on *Toy* where allegations concerned insurer's removal of an arbitration clause in contract without notifying plaintiff, since plaintiff's claim arose from the insurance policy and did not concern the solicitation of a policy); *cf. Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 (3d Cir. 2014) (upholding dismissal of statutory bad faith claim where plaintiff's allegations involved the sale of policies that provided illusory coverage, and not the defendant's discharge of its obligations under those policies).  Therefore, we cannot dismiss Plaintiff's bad faith claim at this early stage.  Facts revealed in discovery will inform the Court whether Defendant acted reasonably in discharging its obligations under the Policy.

      **c. Count III – Promissory Estoppel**

For a claim of promissory estoppel to survive a motion to dismiss, a plaintiff must sufficiently allege the following elements:  "(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).  Defendant contends that because Plaintiff agrees there was a valid and enforceable contract between the parties, a promissory estoppel claim cannot stand.  Def.'s Br. 16-17.  Plaintiff indeed agrees that there was a valid and enforceable contract between the parties, but argues the promissory estoppel claim is

---

[7] To the extent Plaintiff may be alleging bad faith in policy sales practices in Paragraph 87(f) of the Amended Complaint, Plaintiff will not be permitted to support his bad faith claim moving forward with this allegation, for the reasons set forth in *Toy*.

based on a promise separate and apart from the Policy, namely, the 1993 Illustration.  *See* Pl.'s Br. 10; *see also* Am. Compl. ¶ 92.

In the Amended Complaint, Plaintiff alleges that the 1993 Illustration was a promise made by the Defendant on which Plaintiff "relied to its detriment."  *See* Am. Compl. ¶ 93.  But the Amended Complaint and the exhibits incorporated therein reflect that to the extent the 1993 Illustration or the accompanying letter conveyed any promises to the Insured, such promises were made by the HSA Corporation or its employees, *not* Defendant.  In fact, Plaintiff admits that he cannot, at this time, allege any agency between HSA Corporation and Defendant at all.  *See* Doc. 18 at 2 (Letter from Jeffrey W. Ogren, Esquire, Nov. 19, 2014); Hr'g Tr. 3:24-4:13, 5:12-18.  Even if the Court accepts as true Plaintiff's allegation that Defendant provided the 1993 Illustration to HSA,[8] *see* Am. Compl. ¶¶ 28, 32, alleging that Defendant prepared or provided the 1993 Illustration to HSA is not tantamount to alleging that Defendant authorized HSA to share the 1993 Illustration with Plaintiff or to make specific representations about the Illustration.[9]  Accordingly, this claim is dismissed without prejudice to Plaintiff's right to re-plead, should Plaintiff uncover additional facts demonstrating a connection between HSA Corporation and Defendant that support such a claim.

## d. Count IV – Fraud

To plead common law fraud under Pennsylvania law, a plaintiff must plead: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action;

---

[8] Notably, Defendant's name does not appear anywhere on the 1993 Illustration attached to Plaintiff's Amended Complaint at Ex. G.

[9] The Court also notes that the language of the letter accompanying the 1993 Illustration, which Plaintiff has incorporated into the Amended Complaint, is not as definite as Plaintiff's allegations suggest.  The letter does not state that the Insured was no longer required to pay premiums or submit payment in response to premium Notices.  Instead, it indicated that *if* existing dividends were used to pay premiums, the policy would remain in force without the Insured having to pay additional premiums.  *See* Am. Compl., Ex. G.

(4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008), as amended (Nov. 6, 2008) (quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)). To overcome a motion to dismiss, a plaintiff's claim of fraud must also satisfy Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Plaintiff argues that the following allegations of misrepresentations by Defendant are sufficient to support his fraud claim:

- "The Policy was marketed and sold as 'Vanishing Premium Policy,' which, according to Defendant, after a certain number of annual premiums were paid on the Policy, the dividends from the premiums would be used to pay all future annual premiums. As a result, no future premiums would be due on the Policy as the dividends from the previously paid premiums would pay the future premiums." Am. Compl. ¶ 13.

- "The Insured was advised that pursuant to this Policy, after the first nine annual premiums were paid to Defendant, no further premiums would have to be paid." *Id.* ¶ 14.

- "Indeed, the Insured had been advised on numerous occasions that no further premiums would be due on the Policy after the payment of nine annual premium payments." *Id.* ¶ 25.

- "Significantly, Defendant's Illustration clearly states that no premiums were due on the Policy until at least 2013." *Id.* ¶ 47.

- "Defendant falsely represented to the Insured that the Policy was a 'vanishing premium policy' that would fund itself from the dividends after nine annual payments were made on the Policy." *Id.* ¶ 96.

- "Defendant further falsely represented, by and through the written Illustration, that no additional premiums were due on the Policy until 2013." *Id.* ¶ 97.

*See also* Pl.'s Br. 10-12; Doc. 18.

Aside from Plaintiff's allegations concerning the 1993 Illustration, Plaintiff's allegations of fraud are devoid of the factual detail that Rule 9(b) demands. Plaintiff has not provided the

date, time, and place of any specific representation by Defendant in marketing or selling the Policy, or in communicating with Plaintiff as alleged in Paragraphs 25 and 96. Further, Plaintiff has not even attempted to identify any individual who made such a representation on Defendant's behalf. With respect to the 1993 Illustration, as noted above, Plaintiff alleges that misrepresentations were made by HSA Corporation or its employees, but the Amended Complaint does not sufficiently connect HSA with Defendant. Therefore, Plaintiff's fraud claim is also dismissed without prejudice.

### e. Count V – UTPCL Violation

In order to state a claim under the UTPCL, Plaintiff must plead the elements of common law fraud and Plaintiff's pleading must satisfy Rule 9(b). *Plaum v. Jefferson Pilot Fin. Ins. Co.*, 2004 WL 2980415, at *3 (E.D. Pa. Dec. 22, 2004) (citing *Glatthorn v. Independence Blue Cross*, 34 F. App'x 420, 422-23 (3d Cir. 2002). Plaintiff appears to base his UTPCL claim on the same actions and representations he alleges to support his claim for fraud. Pl.'s Br. 10-12; Doc. 18 at 2 (Letter from Jeffrey W. Ogren, Esquire, Nov. 19, 2014); Am. Compl. ¶¶ 103-08. As discussed, these allegations fail to satisfy Rule 9(b); therefore, Plaintiff's UTPCL claim is also dismissed without prejudice.

### f. Statute of Limitations

Defendant also argues that all counts of Plaintiff's Amended Complaint are time-barred by the applicable Pennsylvania statutes of limitations. Having decided that Counts III, IV, and V must be dismissed, the Court must consider the statute of limitations arguments with respect to Counts I and II only.

On the face of Plaintiff's Amended Complaint, he alleges that he did not learn, and despite reasonable diligence could not have known, of the breach of contract and bad faith claims

11

until March 2013, well within the applicable statutes of limitations.[10] Construing the facts in the light most favorable to Plaintiff, the Court finds it premature at this very early stage of the litigation to dismiss Plaintiff's allegations based on Defendant's contention that the "discovery rule" did not toll the statute of limitations here. The facts, as reflected in the Amended Complaint, do not provide sufficient information for the Court to determine at this stage whether Plaintiff could not reasonably have known of the policy lapse until March 2013. Based on the representations of counsel at oral argument on the Motion to Dismiss, we believe that the parties will develop sufficient facts during discovery to allow the issue to be fully considered at the summary judgment stage. *See Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002) ("If the [statute of limitations] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."). Accordingly, Defendant's Motion to Dismiss based on statute of limitations grounds is denied without prejudice to Defendant to raise this issue again at the summary judgment stage.

## IV. CONCLUSION

For the reasons given above, Defendant's Motion to Dismiss Plaintiff's Amended Complaint will be granted in part (Counts III, IV, and V) and denied in part (Counts I and II). An implementing order follows.

---

[10] Plaintiff's breach of contract claim is subject to a four-year statute of limitations period accruing from the date of breach. 42 Pa. Const. Stat. § 5525(a)(8). Plaintiff's bad faith claim is subject to a two-year statute of limitations period. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 223-24 (3d Cir. 2005); *Ash v. Cont'l Ins. Co.*, 861 A.2d 979, 984 (Pa. Super. Ct. 2004).